# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AKIEM WILLIAMS,

       *Plaintiff*,

v.

MONTREAL ELLERBE, *et al.*,

       *Defendants*.

Civil Action No. 16-1714 (RDM)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Akiem Williams's motion to substitute the District of Columbia for the District of Columbia Department of Corrections ("DOC") as a Defendant in this action. Dkt. 35. For the reasons that follow, the Court will **DENY** the motion.

### I. BACKGROUND

The amended complaint, Dkt. 34, alleges the following facts, which the Court must accept as true for purposes of the pending motion. *See Wood v. Moss*, 134 S. Ct. 2056, 2065–67 & n.5 (2014) (motion to dismiss); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010) ("'[D]istrict court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss.'" (citation omitted)).

In August 2014, Williams was incarcerated in the District of Columbia jail. Dkt. 34 at 3 (Am. Compl. ¶ 10). After not having the opportunity to shower for three days, Williams expressed "his desire to shower with soap" to Defendant Montreal Ellerbe, a corrections officer. *See id.* at 4 (Am. Compl. ¶¶ 14–16). The next day, August 25, 2014, Williams asked Officer Ellerbe "whether he had remembered [to bring] the soap packs." *Id.* at 5 (Am. Compl. ¶ 19). Officer Ellerbe replied, "I got you, I did not forget" and escorted Williams to the shower. *Id.*

(Am. Compl. ¶¶ 19–20). No one else was present. *Id.* (Am. Compl. ¶ 20). After Williams asked for the soap packs, Officer Ellerbe left and returned a few minutes later "with a broken and dirty piece of bar soap." *Id.* (Am. Compl. ¶ 22). Williams said that "he could not use that soap," *id.* (Am. Compl. ¶ 22), and "requested a 'White Shirt,' which is slang for a [l]ieutenant, a higher-ranking corrections officer," so that he could "get a proper soap pack." *Id.* (Am. Compl. ¶ 22).

Five to ten minutes later, Officer Ellerbe "arrived at the shower area" with two other corrections officers, Defendants Andre Taylor and Christian Pam. *Id.* (Am. Compl. ¶ 23). By this time, Williams had been placed "inside a locked shower cage." *Id.* (Am. Compl. ¶ 24). Officer Ellerbe said, "What are you doing all that for?" and Williams told him to "shut up." *Id.* (Am. Compl. ¶ 25). According to Williams, Officer Ellerbe "then took out his keys, opened up the shower cage, [and] immediately attacked . . . Williams with clenched fists, using both hands," knocking Williams to the floor. *Id.* at 6 (Am. Compl. ¶¶ 26–27). Officer Taylor allegedly "came in and grabbed . . . Williams'[s] legs [and] kicked and stomped" his "body." *Id.* (Am. Compl. ¶ 28). During the beating, which "went on for several minutes," Officer Pam "shouted[,] 'That's enough! That's enough!' but made no other attempt to interfere." *Id.* (Am. Compl. ¶¶ 30–31). Officer Pam eventually "called a Code Blue to indicate . . . that reinforcements were needed." *Id.* (Am. Compl. ¶ 32). Before the reinforcements arrived, Officer Ellerbe allegedly "emptied [an] entire can of mace" into Williams's face, temporarily blinding him and making it difficult for him to breathe. *Id.* at 6–7 (Am. Compl. ¶ 33).

The next day, Williams "complained to the D.C. Department of Corrections about the [alleged] beating and macing . . . via the Inmate Grievance Process." *Id.* at 7 (Am. Compl. ¶ 36). He submitted four additional complaints over the next six months. *Id.* (Am. Compl. ¶¶ 37–40).

He "received form-letter replies" to his complaints, but "no disciplinary action" was taken against Officers Ellerbe, Taylor, or Pam. *Id.* (Am. Compl. ¶¶ 41–42).

Williams, proceeding *pro se*, filed this action against the three officers and the DOC, asserting claims under 42 U.S.C. § 1983. Dkt. 1. He claims that Officers Ellerbe and Taylor used excessive force and that Officer Pam and the DOC were deliberately indifferent to this use of force, all in violation of Williams's Eighth Amendment protection against cruel and unusual punishment. Dkt. 34 at 8–11 (Compl. ¶¶ 44–59). Williams seeks damages and attorney's fees. *Id.* at 11 (Am. Compl. Prayer).

After several status conferences, the Court appointed Williams counsel from the Civil Pro Bono Panel and stayed the proceedings pending completion of the appointment process. Minute Order (June 27, 2017). At a subsequent scheduling conference, the Court granted Williams leave to file an amended complaint. Minute Order (Aug. 15, 2017). Williams submitted his amended complaint, Dkt. 34, and also moved to substitute the District of Columbia for the DOC as a Defendant because the DOC is *non sui juris*, Dkt. 35. The DOC opposes the motion because "such a substitution would be futile, as [the] [a]mended [c]omplaint fails to state a claim against the District [of Columbia]." Dkt. 37 at 1.

## II. ANALYSIS

Under the Federal Rules of Civil Procedure, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. In addition, the Court must "freely" grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although "this mandate is to be heeded," *Foman v. Davis*, 371 U.S. 178, 182 (1962), that "does not mean that a motion for leave to amend must be granted as a matter of course," *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 191 (D.D.C. 2017). Rather, the Court must consider whether

3

"any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment"—counsels against allowing the proposed amendment. *Foman*, 371 U.S. at 182.

For present purposes, only the futility factor is relevant. A court "has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *In re Interbank Funding Corp.*, 629 F.3d at 215 (quoting *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004)). The standard for deciding whether to deny leave due to futility is, as a result, "for practical purposes . . . identical to [the standard governing] a Rule 12(b)(6)" motion to dismiss. *Id.* at 215–16. "Because leave to amend should be liberally granted, the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend." *Jones v. Castro*, 200 F. Supp. 3d 183, 186 (D.D.C. 2016); *see Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

42 U.S.C. § 1983 provides a private cause of action against any "person" who, under color of state or District of Columbia law, deprives another individual of a federal constitutional or statutory right. 42 U.S.C. § 1983. Municipalities like the District of Columbia may be held liable for their "agents' constitutional torts" but only if those agents "acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). To establish municipal liability under § 1983, Williams must demonstrate, first, that "there was an underlying constitutional [or statutory] violation" and, second, that "the municipality's policy or custom caused the constitutional violation." *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155 (D.D.C. 2015). To show that a D.C. "custom or policy caused the claimed violations of his constitutional rights,"

Williams must establish that the municipality (1) "explicitly adopted the policy that was the moving force of the constitutional violation;" (2) "knowingly ignore[d] a practice that was consistent enough to constitute custom;" or (3) failed to "respond[] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Warren*, 353 F.3d at 39 (internal quotation marks omitted).

Only the last means of satisfying the causation requirement—deliberate indifference—is relevant here. Deliberate indifference "'is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations,' but did not act." *Id.* (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)); *see Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (same). As the D.C. Circuit has explained, this standard "means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [a municipality] may not adopt a policy of inaction." *Warren*, 353 F.3d at 39.

In opposing the motion to substitute, the DOC advances a single argument: that the amended complaint, even with the requested substitution, fails to state a claim for municipal liability because Williams has not adequately alleged that the purported violation of his constitutional rights was caused by a custom or policy of the District. Dkt. 37 at 2–3. The DOC asserts that the amended complaint "fails to make a single specific factual allegation about a District of Columbia policy or policymaker," that it "does not assert that the individual Defendants were acting pursuant to any official policy or custom of the District [of Columbia] when they allegedly caused his injury," and that it does not allege that the District of Columbia's "refusal to act on his written complaints was the result of a policy or custom." *Id.* at 2–3. The

5

DOC concludes that, because Williams "presents no allegations suggesting municipal liability under § 1983, substituting the District [of Columbia] as a [D]efendant would be futile." *Id.* at 3.

Williams disputes the DOC's characterization of the amended complaint. The amended complaint, according to Williams, asserts that the District of Columbia "evinced a deliberate indifference to the violence meted out to him in prison . . . [and] to his need for physical safety by not acting on five separate grievances." Dkt. 38 at 2–3. Although those grievances were filed after the alleged attack, Williams argues that the District's failure to take disciplinary action shows that "the District of Columbia knowingly ignores an unconstitutional practice." *Id.* at 3 (internal quotation marks omitted).

Williams has not plausibly alleged that the District of Columbia is liable under § 1983 for deliberate indifference to the use of excessive force. Even assuming that the District of Columbia is substituted for the DOC, the amended complaint alleges only that Williams alerted the District to the officers' alleged misconduct after the fact by filing five separate complaints, *see* Dkt. 34 at 7 (Am. Compl. ¶¶ 36–40), that he received form replies in response, *id.* (Am. Compl. ¶ 41), and that "no disciplinary action" was taken against Officers Ellerbe, Taylor, and Pam, *id.* (Am. Compl. ¶ 42). According to the amended complaint, "by refusing to act on [his] five separate written complaints," the District was deliberately indifferent both to "the violent treatment" by Officers Ellerbe and Taylor and "the deliberate indifference of Officer Pam." *Id.* at 11 (Am. Compl. ¶ 59). Williams concludes that this failure to respond constitutes "deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Id.* (Am. Compl. ¶ 59) (internal quotation marks omitted).

Taken as true, however, these allegations do not show that the District's deliberate indifference to the Williams's complaints about the beating *caused* that event. To begin, the

6

Court may not credit legal conclusions that are not supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The allegations of fact raised in the amended complaint, however, establish only that the District had knowledge after the fact that two of its employees beat Williams. Those allegations do not address what the District knew or should have known *before* the alleged attack, and they do not support a claim that the District's deliberate indifference *caused* or *failed to prevent* the incident. Accordingly, even if the Court were to grant Williams's request to substitute the District as a defendant, the amended complaint would still fail to state a cognizable claim against the District. The substitution, therefore, would be futile.

This conclusion, moreover, is consistent with the decisions of other judges "in this jurisdiction," which "have recognized that municipal liability can be predicated on the District's failure to address repeated complaints of harassment and unconstitutional . . . behavior." *Bell*, 82 F. Supp. 3d at 158. In *Singh v. District of Columbia*, for instance, the plaintiff alleged that he had "expressly reported . . . harassment [by police officers] on five separate occasions." 881 F. Supp. 2d 76, 87 (D.D.C. 2012). Assuming the truth of this allegation, "the District would have been aware of the risk of constitutional violations [but] nothing was done to stop, discipline, or investigate the defendant officers." *Id.* The Court concluded that the plaintiff had "pleaded sufficient facts to indicate that the District was or should have been aware of the risk of constitutional violations from the defendant officers' actions, and that it engaged in deliberate indifference by failing to take any ostensible action in response." *Id.*; *see also Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008). In *Singh* and similar cases, the municipality received notice of the risk *before* the constitutional tort occurred. In the present

7

case, however, Williams fails to allege that the District had any advance notice or reason to believe that the correctional officers posed a risk to Williams or any other inmates. If Williams obtains discovery supporting such a contention, he can seek leave to amend at that time.

The Court will, accordingly, **DENY** Williams's motion to substitute without prejudice, Dkt. 35.

## CONCLUSION

For the reasons above, it is hereby **ORDERED** that Williams's motion to substitute the District of Columbia for the D.C. Department of Corrections as a Defendant in this action, Dkt. 35, is **DENIED** without prejudice; and it is further

**ORDERED** that the D.C. Department of Corrections is **DISMISSED** as a Defendant in this action; and it is further

**ORDERED** that all Defendants shall answer or otherwise respond to the amended complaint on or before July 13, 2018.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 29, 2018